Filed 7/19/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| HAPPY NAILS & SPA OF FASHION VALLEY, L.P., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JULIE A. SU, as Labor Commissioner, etc., <br><br> Defendant and Respondent. | D060621 <br><br><br> (Super. Ct. No. 37-2009-00090193-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge. Reversed and remanded with directions.

Law Office of Stuart Miller and Stuart Miller; Scott & Whitehead, R. Craig Scott and Diane D. Stalder for Plaintiffs and Appellants.

Deborah D. Graves for Defendant and Respondent.

Happy Nails & Spa of Fashion Valley, L.P. (Happy Nails of Fashion Valley); Happy Nails & Spa of Mira Mesa, L.P. (Happy Nails of Mira Mesa); and The H & N Group Management Co. (H & N Group) (collectively Happy Nails) appeal the judgment

denying relief on their verified complaint and petition (the complaint) against the Labor Commissioner of the State of California (the Commissioner). By the complaint, Happy Nails sought to set aside an administrative decision assessing civil penalties for its failure to provide cosmetologists who work at its salons with employee wage statements that itemize deductions. We agree with Happy Nails that a final decision of the California Unemployment Insurance Appeals Board (the Board) that the cosmetologists are not employees collaterally estops the Commissioner from assessing those penalties. We therefore reverse the judgment and remand the matter for further proceedings concerning other relief requested by Happy Nails.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Happy Nails' Business*

Happy Nails of Fashion Valley and Happy Nails of Mira Mesa are limited partnerships that own salons in which cosmetologists provide manicures, pedicures, and face and skin treatments to clients. H & N Group is the general partner of Happy Nails of Fashion Valley, Happy Nails of Mira Mesa, and other limited partnerships doing business under the Happy Nails name. H & N Group also provides management services to incorporated salons doing business under the Happy Nails name.

In 2001, Happy Nails hired a consultant to help restructure its business operations in such a way that the cosmetologists would be independent contractors rather than employees. By early 2003, Happy Nails implemented the changes recommended by the consultant at all of its salons.

2

B.	*The Proceedings Before the Employment Development Department and the Board*

In 2004, the Employment Development Department (the Department), an entity within the Labor and Workforce Development Agency (Unemp. Ins. Code, § 301), issued assessments against H & N Group, Happy Nails of Fashion Valley, Happy Nails of Mira Mesa, and 35 other salons doing business under the Happy Nails name, for unpaid unemployment insurance contributions (*id.*, § 1126). H & N Group and the salons petitioned the Department for reassessment. At the direction of the administrative law judge assigned to hear the petitions, H & N Group selected one salon (located in Chino Hills) and the Department selected another (located in Irvine) for a combined hearing. The parties later stipulated that the record from that hearing would be used to decide the reassessment petitions for the remaining 35 salons.

After a two-day hearing at which eight witnesses testified and more than 50 exhibits were admitted concerning business operations at the salons, the administrative law judge issued decisions granting the petitions for reassessment. Each decision states: "The issues in this case are whether the workers were employees of the petitioner and, if so, whether the petitioner is liable for unemployment, employment training, and disability contributions, personal income tax withholdings, penalties, and interest." After summarizing the facts regarding the conduct of business at the salons, the administrative law judge listed the factors relevant to determining whether a worker is an employee or

an independent contractor,[1] and then applied those factors to the facts. Specifically, the administrative law judge found the cosmetologists were not terminable at will, but could only be terminated for death, bankruptcy, or gross violation of the written contract with the salon; the salons exercised no control over the cosmetologists, who used their own skill and judgment in performing services; the cosmetologists provided, at their own expense, many of the materials and all of the equipment they used; the cosmetologists were engaged in a skilled occupation that required many hours of training for licensure; and the processing of payments for services was handled by an independent third party. Based on these findings, the administrative law judge concluded the cosmetologists were

---

[1] The administrative law judge cited *Empire Star Mines Co. v. Cal. Emp. Com.* (1946) 28 Cal.2d 33, 43-44 (*Empire Star Mines*), where the California Supreme Court stated: "In determining whether one who performs services for another is an employee or an independent contractor, the most important factor is the right to control the manner and means of accomplishing the result desired. If the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists. Strong evidence in support of an employment relationship is the right to discharge at will, without cause. [Citations.] Other factors to be taken into consideration are (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." California courts have applied this multi-factor test in subsequent cases where the issue was whether workers were employees or independent contractors. (See, e.g., *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350-351; *Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 949 (*Tieberg*); *Arnold v. Mutual of Omaha Ins. Co.* (2011) 202 Cal.App.4th 580, 588-590 (*Arnold*); *Air Couriers Internat. v. Employment Development Dept.* (2007) 150 Cal.App.4th 923, 933 (*Air Couriers*).)

4

independent contractors rather than employees, and therefore H & N Group and the salons were not liable for the contributions assessed by the Department. The administrative law judge later issued similar decisions reaching the same conclusions as to the other 35 salons, including Happy Nails of Fashion Valley and Happy Nails of Mira Mesa.

The Department appealed the administrative law judge's decisions to the Board. The Board affirmed the decisions in the cases involving the Chino Hills and Irvine salons on November 7, 2007, and affirmed the decisions regarding the other 35 salons on November 24, 2008. The Department did not seek judicial review of the Board's decisions.

C.      *The Proceedings Before the Division of Labor Standards Enforcement*

In August 2008, the Commissioner, acting through the Division of Labor Standards Enforcement (the Division), an entity within the Department of Industrial Relations (Lab. Code, § 79), issued citations to and assessed civil penalties against Happy Nails for paying the cosmetologists who worked at Happy Nails of Fashion Valley and Happy Nails of Mira Mesa without giving them properly itemized wage statements (*id.*, §§ 226, subd. (a), 226.3, 226.4). Happy Nails contested the citations and requested a hearing. (*Id.*, § 226.5.) A combined hearing concerning the two salons was set for February 2009.

Before the hearing, Happy Nails submitted a brief with supporting exhibits in which it argued an evidentiary hearing was unnecessary because the prior decisions of the Department and the Board conclusively determined the cosmetologists working at Happy

5

Nails of Fashion Valley and at Happy Nails of Mira Mesa were independent contractors and not employees. In the brief, Happy Nails complained that it had "already spent hundreds of thousands of dollars, and borne the burden of years of administrative proceedings, to determine that [its] [c]osmetologists are not employees." Based on the Board's decision and principles of collateral estoppel, Happy Nails urged the hearing officer "to 'avoid chaos' and make a determination consistent with that of the [Board]: that Happy Nails [c]osmetologists are properly classified as independent contractors." The Division submitted an opposition brief in which it contended for various reasons that application of collateral estoppel was "inappropriate in this case." The record contains no ruling by the hearing officer on the collateral estoppel defense raised by Happy Nails.

The hearing officer conducted a one-day hearing at which 10 witnesses testified and 31 exhibits were admitted concerning business operations at the salons. The evidence presented by Happy Nails and the Division was substantially the same as that introduced by Happy Nails and the Department at the prior hearing before the administrative law judge. On March 30, 2009, the hearing officer issued findings and orders affirming the citations and civil penalties assessed by the Division. After summarizing the testimony of the witnesses and describing some of the exhibits, the hearing officer considered various factors relevant to determining whether a worker is an employee or an independent contractor,[2] and concluded Happy Nails is subject to the

2      The hearing officer cited Labor Code section 2750.5, which lists several factors relevant to determining whether a worker is an employee or an independent contractor, but by its terms applies only to those doing work within the scope of the Contractors'

6

civil penalties because the cosmetologists are employees, not independent contractors. The findings and orders did not mention the prior, contrary decisions of the Department or the Board.

D.     *The Proceedings Before the Trial Court*

On May 20, 2009, Happy Nails filed the complaint against the Commissioner in which it challenged the Division's findings and orders. Happy Nails alleged that the Board's decisions that the cosmetologists working at its salons are independent contractors rather than employees are binding on all state agencies, and that the Division's contrary findings and orders subject Happy Nails to inconsistent legal obligations. Happy Nails also alleged the findings and orders were unsupported by the evidence, were issued in excess of the Division's jurisdiction, were the result of an unfair hearing, and violated Happy Nails' federal and state constitutional due process rights. Based on these allegations, Happy Nails asserted several separately labeled "causes of action"; and in the prayer for relief, it requested a writ of administrative mandate to set aside the Division's findings and orders (Code Civ. Proc., § 1094.5), a permanent injunction against future prosecutions of H & N Group or the owners of Happy Nails salons based on the contention that the cosmetologists working at the salons are employees; and attorney fees for violations of its federal due process rights (42 U.S.C. §§ 1983, 1988).

---

State License Law (Bus. & Prof. Code, § 7000 et seq.). Although cosmetologists are not covered by that law, we note that the factors listed in Labor Code section 2750.5 are substantially similar to those identified in *Empire Star Mines*, *supra*, 28 Cal.2d 33.

7

The Commissioner answered Happy Nails' complaint. In the answer, the Commissioner denied that the Board's decisions have preclusive effect on other state agencies and that the Division's findings and orders were unsupported by the evidence, were issued in excess of the Division's jurisdiction, were the result of an unfair hearing, or violated Happy Nails' due process rights. The Commissioner requested that Happy Nails be denied all relief demanded in the complaint.

Happy Nails moved for summary judgment on the ground that the Board's determination that the cosmetologists working at its salons are independent contractors, rather than employees, collaterally estopped the Division from issuing citations and assessing civil penalties for Happy Nails' failure to provide the cosmetologists with itemized wage statements. The Commissioner opposed the motion on the ground that collateral estoppel did not apply. The trial court denied the motion, stating that Happy Nails "ha[s] not shown that the issue sought to be precluded from relitigation is identical to the issue decided in the former proceeding, or that the issue was actually litigated in the former proceeding. [¶] . . . [¶] In addition, even if collateral estoppel applies, triable issues of fact exist relative to a determination of whether the facts litigated in [the hearing involving Department] are the same as those litigated in the [hearing involving the Division]. This alone defeats summary adjudication."

The parties then submitted additional briefing on Happy Nails' request for a writ of administrative mandate, and the trial court held a hearing on that request. In a minute order issued July 22, 2011, the court rejected Happy Nails' collateral estoppel argument, and determined there was substantial evidence in the administrative record to support the

8

Division's findings that the cosmetologists working at Happy Nails salons are employees and not independent contractors. Based on this determination and Happy Nails' concession that it had not provided the cosmetologists with itemized wage statements, the court concluded the Division had properly issued the citations and assessed civil penalties. The court therefore denied Happy Nails' request for writ relief. A judgment denying all relief requested in the complaint was entered August 18, 2011.

## II.

## DISCUSSION

Happy Nails seeks reversal of the judgment denying its request for a writ of administrative mandate and upholding the Division's findings and orders assessing civil penalties for failure to provide cosmetologists with itemized wage statements on the grounds that: (1) the Board's decision that the cosmetologists are not employees binds the Division under the doctrine of collateral estoppel and prohibits it from deciding that issue contrarily to the Board; (2) the Division's prosecution of Happy Nails after it prevailed before the Board violated its due process rights; (3) the trial court applied the wrong standard of review to the Division's findings and orders; (4) the Division did not give Happy Nails a fair hearing; and (5) the Division's findings are not supported by the evidence. Happy Nails also contends it is entitled to an award of attorney fees and an injunction prohibiting the Division from further asserting that the cosmetologists who work at the salons that were the subject of the Board's decisions are employees unless the Division shows the relationship between the cosmetologists and those salons has materially changed.

9

As we shall explain, we agree with Happy Nails that the judgment denying its request for a writ of administrative mandate must be reversed and the Division's findings and orders set aside based on principles of collateral estoppel. We therefore need not and do not address the other grounds on which Happy Nails attacks the judgment. We remand the case for further proceedings on Happy Nails' related claims for an injunction and attorney fees.

A.    *The Trial Court Erred by Denying Happy Nails' Request for Writ of Administrative Mandate*

We first address Happy Nails' request for a writ of administrative mandate to set aside the Division's findings and orders. We shall set forth the applicable standard of review, explain why the Board's decisions collaterally estop the Division, and then reject the Commissioner's arguments that collateral estoppel does not apply.

1.    *The Standard of Review Is De Novo*

"Insofar as the appeal from the administrative mandamus proceeding presents questions of law, our review is de novo." (*California Dept. of Corrections v. State Personnel Bd.* (2004) 121 Cal.App.4th 1601, 1611.) "The issue whether collateral estoppel applies is itself a question of law, which question we review de novo." (*Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 618; see also *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 399 (*Murphy*) ["We review do novo the trial court's determination that respondent's claims in the instant action are not barred by collateral estoppel."].)

10

2.	*The Requirements for Application of Collateral Estoppel Are Satisfied*

Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating issues litigated and decided in a prior proceeding.  (*Teitelbaum Furs, Inc. v. Dominion Ins. Co.* (1962) 58 Cal.2d 601, 604; *Gabriel v. Wells Fargo Bank, N.A.* (2010) 188 Cal.App.4th 547, 556.)  "It is settled that the doctrine of collateral estoppel or issue preclusion is applicable to final decisions of administrative agencies acting in a judicial or quasi-judicial capacity."  (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 867 (*Murray*).)[3]  For an issue to be precluded from relitigation, the following requirements must be satisfied:  (1) the issue must be identical to an issue decided in a prior proceeding; (2) the issue must have been actually litigated in the prior proceeding; (3) the issue must have been necessarily decided in the prior proceeding; (4) the decision in the prior proceeding must be final and on the merits; and (5) the party against whom preclusion is sought must have been a party to or in privity with a party to the prior proceeding.  (*People v. Garcia* (2006) 39 Cal.4th 1070, 1077; *Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481 (*Castillo*).)  As we explain below, each requirement is satisfied in this case.

_____

[3]	"'[I]ndicia of [administrative] proceedings undertaken in a judicial capacity include a hearing before an impartial decision maker; testimony given under oath or affirmation; a party's ability to subpoena, call, examine, and cross-examine witnesses, to introduce documentary evidence, and to make oral and written argument; the taking of a record of the proceeding; and a written statement of reasons for the decision.'"  (*Murray*, *supra*, 50 Cal.4th at pp. 867-868.)  The hearing before the administrative law judge had these indicia, and the Commissioner does not contend otherwise.

a.      *The Issues Are Identical*

The identical issue requirement of collateral estoppel "addresses whether 'identical factual allegations' are at stake in the two proceedings."  (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342 (*Lucido*); *Basurto v. Imperial Irrigation Dist.* (2012) 211 Cal.App.4th 866, 887 (*Basurto*); *Castillo*, *supra*, 92 Cal.App.4th at p. 481.)  To determine whether two proceedings involved identical issues, courts "consider several factors:  'Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?  Does the new evidence or argument involve application of the same rule of law as that involved in the prior proceeding?  Could pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?  How closely related are the claims involved in the two proceedings?'"  (*Burdette v. Carrier Corp.* (2008) 158 Cal.App.4th 1668, 1689 (*Burdette*).)  In making this determination, we may examine the entire record of each proceeding.  (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511 (*Hernandez*); *Murphy*, *supra*, 164 Cal.App.4th at p. 401; see *Castillo*, at pp. 481-482.)

In the proceedings to which the Department was a party, the decisions of the administrative law judge state:  "The issues in this case are *whether the workers were employees of the petitioner* and, if so, whether the petitioner is liable for unemployment, employment training, and disability contributions, personal income tax withholdings, penalties, and interest."  (Italics added.)  The decisions then analyze the facts and legal principles relevant to a determination of that issue, and conclude Happy Nails is not

12

liable for the challenged assessments because the cosmetologists working at its salons are independent contractors.

In the proceedings to which the Division was a party, the findings and orders of the hearing officer do not state explicitly the issues to be decided. They do, however, identify several "factors to be considered in determining *whether or not the relationship between the parties is that of an employer*[-]*employee or principal*[-]*independent contractor*." (Italics added.) The findings and orders go on to apply those factors to the evidence introduced at the hearing, and ultimately conclude Happy Nails is liable for the civil penalties assessed because the cosmetologists working at the salons are employees.

From these written decisions, it is clear that in both administrative proceedings the decision maker applied the same multi-factor test to substantially the same evidence to decide whether the cosmetologists working at Happy Nails salons are employees or independent contractors. (See fns. 1 & 2, *ante*.) We therefore conclude that " 'identical factual allegations' [were] at stake in the two proceedings," and that the identical issue requirement of collateral estoppel is met. (*Lucido*, *supra*, 51 Cal.3d at p. 342.)

b.      *The Issue Was Actually Litigated*

The issue of the cosmetologists' status as employees or independent contractors was actually litigated in the proceedings involving the Department. "For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding." (*Hernandez*, *supra*, 46 Cal.4th at p. 511.) In the hearing before the administrative law judge, the Department contended the cosmetologists are employees while Happy Nails contended

13

they are independent contractors, the parties presented testimony and documents in support of their opposing views, and the administrative law judge determined the cosmetologists are independent contractors. Upon appeal by the Department, the Board affirmed that determination. The "actually litigated" element of collateral estoppel is therefore satisfied. (See, e.g., *Lucido*, *supra*, 51 Cal.3d at p. 341 [issue was actually litigated in prior proceeding when "parties each presented evidence and witnesses in support of their positions"]; *Castillo*, *supra*, 92 Cal.App.4th at p. 482 [issue was actually litigated in prior administrative proceeding when party raised issue and presented evidence at hearing, and issue was resolved in written decision].)

    c.  *The Issue Was Necessarily Decided*

   The issue of the cosmetologists' status as employees or independent contractors was also necessarily decided in the administrative proceedings involving the Department. For purposes of collateral estoppel, an issue is considered to have been necessarily decided in a prior proceeding as long as the issue was not " 'entirely unnecessary' " to the decision in that proceeding. (*Lucido*, *supra*, 51 Cal.3d at p. 342; *Basurto*, *supra*, 211 Cal.App.4th at p. 887.) Though somewhat circular, this test is easily satisfied here.

   The cosmetologists' status as employees or independent contractors determines Happy Nails' liability for contributions and taxes under the Unemployment Insurance Code. Such liability exists only if workers are employees rather than independent contractors. (*Tieberg*, *supra*, 2 Cal.3d at p. 946; *Hunt Building Corp. v. Bernick* (2000) 79 Cal.App.4th 213, 219.) Hence, to resolve Happy Nails' reassessment petitions, the administrative law judge and the Board had to, and did, decide whether the

14

cosmetologists working at Happy Nails salons are employees or independent contractors. Since resolution of that issue was dispositive of Happy Nail's petitions, the issue obviously was not "'entirely unnecessary'" to that decision. (*Lucido*, at p. 342; see *Mattson v. City of Costa Mesa* (1980) 106 Cal.App.3d 441, 445 (*Mattson*) [collateral estoppel precludes relitigation of "dispositive factual questions [that] were actually litigated" in prior proceeding].)

      d.    *The Decisions Are Final and on the Merits*

The Board's decisions affirming those of the administrative law judge are final and on the merits. A decision of the Board becomes final six months after it is issued if it is not challenged in court during that time. (Unemp. Ins. Code, § 410; *Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494, 1502; *Long Beach Unified Sch. Dist. v. State of California* (1990) 225 Cal.App.3d 155, 169.) Since the Department did not seek judicial review of the Board's decisions, they became final on May 7, 2008, and May 24, 2009, six months after they were issued. The Board's decisions were thus final for purposes of the trial court proceedings. (See *Causey v. Board of Pension Commissioners* (1984) 152 Cal.App.3d 484, 490 (*Causey*) [when administrative decision becomes final during pendency of court proceeding, decision may be given collateral estoppel effect in court proceeding].) The decisions also were on the merits because, as we explained earlier, they "followed a 'full hearing' in which '"the substance of the claim [was] tried and determined."'" (*Castillo*, *supra*, 92 Cal.App.4th at p. 483; accord, *Basurto*, *supra*, 211 Cal.App.4th at p. 892.)

15

e.      *The Department and the Division Are in Privity*

The final requirement for application of collateral estoppel is that the party to be estopped must have been a party to, or in privity with a party to, the prior proceeding. The determination that parties are in privity is essentially a policy decision that the parties have a sufficiently close relationship or an identity of interests that justifies application of the doctrine of collateral estoppel. (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 849 (*Gikas*); *People v. Sims* (1982) 32 Cal.3d 468, 486-487 (*Sims*); *Kelly v. Vons Companies, Inc.* (1998) 67 Cal.App.4th 1329, 1338.) Generally, "the courts have held that the agents of the same government are in privity with each other, since they represent not their own rights but the right of the government." (*Lerner v. Los Angeles City Board of Education* (1963) 59 Cal.2d 382, 398; accord, *Sims*, at p. 487; *Carmel Valley Fire Protection Dist. v. State of California* (1987) 190 Cal.App.3d 521, 535 (*Carmel Valley*).) But, "[w]here two public agencies' interests conflict, there is no privity." (*Hudson v. Board of Administration* (1997) 59 Cal.App.4th 1310, 1330 (*Hudson*).)

The general rule that agents of the same government are in privity applies here. The Department and the Division are both state agencies charged with enforcement of laws designed to benefit and protect employees. (See Lab. Code, § 79, 95; Unemp. Ins. Code, § 301; *Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 563 ["The [Division] is the state agency authorized to enforce California's labor laws."]; *Air Couriers*, *supra*, 150 Cal.App.4th at pp. 931-932 [describing employee benefit programs funded by employers and employees and administered by Department].) The agencies thus share the goal of ensuring that workers are correctly classified as employees or

16

independent contractors.  Since, as we have explained, that was the central issue in both administrative proceedings, the Division was in privity with the Department for purposes of collateral estoppel.  (See *Gikas*, *supra*, 6 Cal.4th at p. 864 ["California law is clear that when two agents of the state substantially share a goal, resolution of an issue adversely to one binds the other."]; *Sims*, *supra*, 32 Cal.3d at pp. 487-488 [district attorney involved in criminal action was in privity with county social services department involved in prior administrative proceeding because both entities acted to control welfare fraud, the issue central to both proceedings]; *Carmel Valley*, *supra*, 190 Cal.App.3d at pp. 530, fn. 1, 535-536 [state agencies involved in mandate proceeding were in privity with other state agencies involved in prior administrative proceeding because all were interested in reimbursement issue central to both proceedings].)

3.      *The Commissioner's Arguments Against Application of Collateral Estoppel Have No Merit*

The Commissioner argues the Board's decisions cannot operate as a bar to the Division's enforcement action because the requirements of collateral estoppel have not been met.  Specifically, the Commissioner contends:  (1) the issues litigated in the two proceedings were not identical because the facts presented in the two administrative hearings involved different salons and time periods and were otherwise not the same; (2) the issue that Happy Nails sought to preclude the Division from litigating, which the Commissioner identifies as Happy Nails' liability for failing to provide itemized wage statements to the cosmetologists working at its salons during a certain time period, was not actually litigated by the Department, which litigated only Happy Nails' tax liability

17

for an earlier time period; and (3) the Department and the Division are not in privity because they were established by different statutes, enforce different statutes and regulations, and use different definitions of "employee." The Commissioner also asserts that "collateral estoppel should not be applied because public policy dictates that the [Division] should not be precluded from making its own determination of employment status." We are not persuaded.

      a.     *The Commissioner Misunderstands What Constitutes the "Issue" for Preclusion Purposes*

The Commissioner's first two arguments proceed from a misunderstanding of what constitutes the "issue" for purposes of collateral estoppel in this case. Collateral estoppel applies when "'an issue of ultimate fact'" has been previously and finally decided. (*People v. Santamaria* (1994) 8 Cal.4th 903, 912; *California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 249; *Lucas v. County of Los Angeles* (1996) 47 Cal.App.4th 277, 286.) An ultimate fact is one that involves application of law to fact, such as an essential element of a claim or a defense, as distinguished from an evidentiary fact or a legal conclusion. (*Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 689; Rest.2d Judgments, § 27, com. c., p. 253; Black's Law Dict. (9th ed. 2009) p. 671, col. 1.) Whether a worker is an employee or an independent contractor is an issue of ultimate fact. (*Arnold*, *supra*, 202 Cal.App.4th at p. 590; *Stoica v. Pocol* (2001) 136 Idaho 661, 664 [39 P.3d 601, 604]; *Felice v. St. Agnes Hospital* (N.Y.App.Div. 1978) 65 A.D.2d 388, 396 [411 N.Y.S.2d 901, 907].) Thus, the Board's prior and final decision that the cosmetologists working at Happy Nails salons are independent contractors rather

18

than employees is a decision of an issue of ultimate fact and as such is entitled to collateral estoppel effect in the proceedings involving the Division.

> b.     *The Commissioner May Not Avoid Preclusion Based on Differences in the Evidence Presented at the Two Administrative Hearings*

The Division may not avoid the bar of collateral estoppel simply because evidence concerning different salons was presented at the two administrative hearings. It is true, as the Commissioner points out, that the hearing to which the Department was a party focused on salons in Chino Hills and Irvine, whereas the hearing to which the Division was a party focused on Happy Nails of Fashion Valley and Happy Nails of Mira Mesa. To streamline the proceedings, however, the Department stipulated that the evidence concerning the Chino Hills and Irvine salons would be used to determine Happy Nails' petitions for reassessment concerning the other 35 salons, including Happy Nails of Fashion Valley and Happy Nails of Mira Mesa. (See Unemp. Ins. Code, § 1951 ["The appeals board shall require administrative law judges to consolidate for hearing cases with respect to which the alleged facts and the points of law are the same."].) Final administrative decisions based on stipulated facts have collateral estoppel effect in later administrative proceedings. (*Causey*, *supra*, 152 Cal.App.3d at pp. 486, 490; *Greatorex v. Board of Administration* (1979) 91 Cal.App.3d 54, 58.) Accordingly, the Board's decision that the cosmetologists working at Happy Nails of Fashion Valley and Happy Nails of Mira Mesa are independent contractors, which was based on stipulated facts from the hearing involving the Department, precludes the Division from relitigating that issue.

19

The Commissioner contends the Board's decisions do not bind the Division because there are differences in the time periods covered by the two administrative hearings and disparities in the facts presented at those hearings.[4] The Commissioner cites no legal authority to support this contention, however, and the law is actually to the contrary. The prior determination of an issue is conclusive in a subsequent proceeding between the same parties or their privies not only as to that issue but also as to every factual matter which might have been urged to sustain or defeat its determination. (*Pacific Mut. Life Ins. Co. v. McConnell* (1955) 44 Cal.2d 715, 724-725; *Basurto*, *supra*, 211 Cal.App.4th at p. 888; *Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1301.) Thus, where, as here, the "party against whom preclusion is sought did in fact litigate an issue of ultimate fact and suffered an adverse determination, new

---

[4] The Commissioner asserts the assessments at issue in the prior administrative hearing to which the Department was a party concerned 2003 and 2004, whereas the penalties at issue in the later hearing to which the Division was a party concerned 2007 and 2008. The Commissioner also claims the evidence at the prior hearing showed the cosmetologists were offered the services of a certain payment processor and paid the processing fees, were free to set their own hours, were required to have business licenses, frequently deviated from the salon's price list, had keys to the salons, and frequently worked outside normal salon operating hours. In contrast, the Commissioner contends, the evidence at the later hearing showed the cosmetologists were required to use the same payment processor, but the salons paid the processing fees from the rent paid by the cosmetologists; would be in material breach of their agreements with the salons if they were not at the salons during scheduled times; did not have business licenses; could not set their own prices for standard services, but could charge additional amounts for additional services not on the salon's price list; do not all have keys to the salons; and generally do not work outside normal salon operating hours. Lastly, the Commissioner states the following facts were not mentioned at the hearing involving the Department but were established at the hearing involving the Division: None of the cosmetologists advertise their own businesses or keep their own appointment books, and all business cards contain the Happy Nails logo.

20

evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact."  (Rest.2d Judgments, § 27, com. c, p. 253; see *Direct Shopping Network, LLC v. James* (2012) 206 Cal.App.4th 1551, 1561 (*Direct Shopping Network*) ["new evidence, however compelling, is generally insufficient to avoid application of collateral estoppel"]; *Burdette*, *supra*, 158 Cal.App.4th at p. 1690 [" 'a party may not be permitted to introduce new or different evidence to relitigate a factual issue which was presented and determined in a former action' "]; *MIB, Inc. v. Superior Court* (1980) 106 Cal.App.3d 228, 235 ["Plaintiffs cannot escape the bar of the prior decisions by asserting . . . [they] have other evidence which was not introduced in the earlier proceedings."].)

The Restatement rule stated above is, of course, not absolute.  In particular, "collateral estoppel 'was never intended to operate so as to prevent a re-examination of the same question between the same parties *where, in the interval between the first and second actions, the facts have materially changed or new facts have occurred which may have altered the legal rights or relations of the litigants*.' "  (*Evans v. Celotex Corp.* (1987) 194 Cal.App.3d 741, 748 (*Evans*), italics added; see also *People v. Ocean Shore Railroad* (1948) 32 Cal.2d 406, 418 [collateral estoppel does not apply "where there are changed conditions and new facts which did not exist at the time of the prior judgment"].) The record here does not establish such a material change in circumstances, however.

Many of the differences the Commissioner perceives in the evidence introduced at the two administrative hearings actually do not exist.  For example, the agreements introduced at both hearings were the same form contracts, which require the cosmetologists to have licenses and to use the same payment processor, and require the

salons to give the cosmetologists keys so that they may have access to the salons to do their work.  Other perceived differences are merely different descriptions, characterizations, or interpretations by the administrative law judge and the hearing officer of the same or similar evidence introduced at the hearings (e.g., the extent to which cosmetologists deviated from the salon's price list or were free to set their own working hours).  Still other perceived differences resulted from the introduction at the hearing to which the Division was a party of evidence concerning minor details that could have been, but was not, introduced at the prior hearing to which the Department was a party (e.g., whether individual cosmetologists advertise or use business cards containing the Happy Nails logo).  In any event, the few evidentiary differences that exist do not establish that in the time between the two administrative hearings, the relationship between the salons and the cosmetologists had changed to such an extent that the Division was justified in reexamining the Board's determination that the cosmetologists are independent contractors rather than employees.

        c.       *The Commissioner May Not Avoid Preclusion Based on Differences in the Statutes Involved in the Two Administrative Hearings*

The Division also may not avoid the preclusive effect of the Board's determination on the ground the Department sought to impose liability under the Unemployment Insurance Code on Happy Nails for contributions and taxes, whereas the Division sought to impose civil penalties under the Labor Code for failure to provide itemized wage statements.  "The application of the doctrine of collateral estoppel depends on whether the *issue* in both actions is the same, not whether the issue arises in the same *context*."

(*First N.B.S. Corp. v. Gabrielsen* (1986) 179 Cal.App.3d 1189, 1195-1196.)  Indeed, the doctrine typically applies when the two proceedings involve different causes of action or forms of relief.  (See, e.g., *Murray*, *supra*, 50 Cal.4th at p. 867 [collateral estoppel "'"involves a second action between the same parties on a different cause of action"'"]; *South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 660-661 ["Most commonly, issue preclusion arises from successive suits on different claims; this is referred to as collateral estoppel."]; *Lumpkin v. Jordan* (1996) 49 Cal.App.4th 1223, 1231 (*Lumpkin*) ["collateral estoppel depends on what issues are adjudicated, not the nature of the proceeding or the relief requested"]; *Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 181 ["that different forms of relief are sought in the two lawsuits is irrelevant" to application of collateral estoppel]; *Evans*, *supra*, 194 Cal.App.3d at p. 746 ["Collateral estoppel bars relitigation of the same issues; it does not require identity of legal theories or causes of action."].)  Thus, what matters for purposes of applying collateral estoppel in this case is that "*dispositive factual questions* were actually litigated" and finally decided in the prior administrative proceeding.  (*Mattson*, *supra*, 106 Cal.App.3d at p. 445, italics added.)

> d.       *The Department and the Division Are in Privity Even Though They Were Created by and Enforce Different Statutes*

Next, the Commissioner contends the Department and the Division are not in privity for purposes of collateral estoppel because the two agencies were created by different statutes and enforce different statutory and regulatory schemes.  We disagree. Although the differences identified by the Commissioner establish that the Department

23

and the Division are separate and distinct entities, "[a] public agency may not avoid estoppel by privity on the ground the conduct giving rise to estoppel was committed by an independent public entity." (*Crumpler v. Board of Administration* (1973) 32 Cal.App.3d 567, 583.) Further, although there is no privity where "two public agencies' interests conflict" (*Hudson*, *supra*, 59 Cal.App.4th at p. 1330), the statutory and regulatory differences upon which the Commissioner relies do not show any conflict of interest regarding the issue determined by the Department, namely, whether the cosmetologists working at Happy Nails salons are employees or independent contractors.[5] Rather, as we noted earlier, the interests of the Department and the Division in that regard are completely aligned. (See pt. II.A.2.e., *ante*.) Where, as here,

---

[5] In particular, we do not see any significant difference in the definitions of "employee" used by the Department and the Division as they pertain to this case. The Commissioner contends the Department uses the common law definition of "employee" (Unemp. Ins. Code, § 621, subd. (b)), but the Division uses a broader definition found in a wage order that "incorporates the common law definition *as one alternative*" (*Martinez v. Combs* (2010) 49 Cal.4th 35, 64). The wage order cited by the Commissioner defines "employee" for purposes of the personal service industry as "any person employed by an employer, and includes any lessee who is charged rent, or who pays rent for a chair, booth, or space and [¶] (1) [w]ho does not use his/her own funds to purchase requisite supplies; and [¶] (2) [w]ho does not maintain an appointment book separate and distinct from that of the establishment in which the space is located; and [¶] (3) [w]ho does not have a business license where applicable." (Cal. Code Regs., tit. 8, § 11020, subd. 2(E).) This definition merely took some of the factors from the common law test and adapted them to the particular context of the personal service industry. (See *Empire Star Mines*, *supra*, 28 Cal.2d at pp. 43, 44 [common law factors include "whether the principal or the workman supplies the instrumentalities, tools and the place of work for the person doing the work"; "whether or not the one performing services is engaged in a distinct occupation or business"; and "whether or not the work is a part of the regular business of the principal"].) We thus conclude the Department and the Division used substantially similar definitions of "employee" in the proceedings at issue on this appeal.

24

"two agents of the state substantially share a goal, resolution of an issue adversely to one binds the other." (*Gikas*, *supra*, 6 Cal.4th at p. 864.)

e. *Public Policy Does Not Prohibit Giving Preclusive Effect to the Board's Decisions*

Finally, the Commissioner argues public policy prohibits the application of collateral estoppel in this case. More specifically, the Commissioner contends greater flexibility is required when applying collateral estoppel to administrative decisions than when court decisions are involved, and determining whether a worker is an employee or an independent contractor is so fact-specific and the public policy of protecting workers from misclassification is so great that the Division should be able to make its own determination regardless of the determination made by the Department. We reject this argument.

Public policy may prevent application of collateral estoppel in certain circumstances. Our Supreme Court has held that even when the technical requirements for application of collateral estoppel are satisfied, it will be applied "*only* where such application comports with fairness and sound public policy." (*Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 835.) Thus, a court may not give preclusive effect to a prior decision "if doing so is contrary to the intent of the legislative body that established the proceeding in which . . . collateral estoppel is urged" (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 326), or, more generally, if doing so would not be "fair to the parties" or would not constitute "sound judicial policy" (*Lucido*, *supra*, 51 Cal.3d at p. 343). No such concerns prevent application of collateral estoppel in this case.

25

The Commissioner has not identified any law expressing a legislative intent that neither she nor the agencies under her control be collaterally estopped from relitigating whether a worker is an employee or an independent contractor when that issue has been previously determined. The Commissioner certainly has a legitimate interest in that issue because implementation of the public policy expressed in California's labor laws depends on correct classification of workers as employees or independent contractors so that those who are employees may secure the benefits and protections to which they are entitled under those laws. The Commissioner's interest in that issue is not exclusive, however. The Department and the Board also have a legitimate interest in ensuring workers are correctly classified as employees or independent contractors, so that the unemployment insurance and other programs they administer on behalf of employees are adequately funded by employer and employee contributions. (See *Air Couriers*, *supra*, 150 Cal.App.4th at pp. 931-932 [describing unemployment insurance, disability insurance, and job placement programs administered by Department for employees].) Thus, the Department and the Board must also regularly determine whether a worker is an employee or an independent contractor. When the Board makes a final determination of that issue, the Commissioner may not disregard that determination and relitigate the issue, no matter how zealous her desire may be to enforce the labor laws on behalf of employees. (Cf. *Lumpkin*, *supra*, 49 Cal.App.4th at p. 1231 [public interest in vigorous enforcement of antidiscrimination laws did not allow party asserting religious discrimination to avoid preclusive effect of prior adverse determination of dispositive factual issue]; *Acuña v. Regents of University of California* (1997) 56 Cal.App.4th 639,

652 [public policy against employment discrimination did not allow party to avoid bar of prior judgment that resolved race, ethnicity, and age discrimination claims].)

The Commissioner also has not explained how applying collateral estoppel in this case would be unfair to the parties or would be unsound judicial policy. In fact, she could not do so. As we shall explain, giving the Board's decisions preclusive effect in this case clearly would serve the public policies underlying the doctrine of collateral estoppel — preservation of the integrity of administrative and judicial proceedings, promotion of judicial economy, and protection of litigants from harassment by repeated litigation. (*Murray*, *supra*, 50 Cal.4th at p. 879; *Lucido*, *supra*, 51 Cal.3d at p. 343; *Castillo*, *supra*, 92 Cal.App.4th at pp. 483-484.)

Giving preclusive effect to the Board's decisions fosters the integrity of both administrative and judicial proceedings. The California Supreme Court has held that "the possibility of inconsistent judgments which may undermine the integrity of the judicial system would be prevented by applying collateral estoppel to the [administrative] decision." (*Sims*, *supra*, 32 Cal.3d at p. 488.) That possibility exists here because businesses "have varying responsibilities with respect to persons performing services on their behalf," which "depend, in part, on whether those persons are classified as employees or independent contractors." (*Cristler v. Express Messenger Systems, Inc.* (2009) 171 Cal.App.4th 72, 76.) For example, under the Board's determination that the cosmetologists are independent contractors, Happy Nails has no authority or obligation to withhold income taxes or disability insurance contributions from their wages, because such withholding is only authorized and required for workers who are employees.

27

(Unemp. Ins. Code, §§ 984, 986, 13020, 13021; *Air Couriers*, *supra*, 150 Cal.App.4th at p. 932.) But under the Division's subsequent contrary determination that the cosmetologists are employees, which the trial court upheld, Happy Nails must withhold those taxes and contributions, and also must provide the cosmetologists with wage statements that itemize the amounts withheld. (Lab. Code, § 226, subd. (a).) Hence, if collateral estoppel is not applied and these contrary determinations are allowed to coexist, "not only the integrity of the judicial system, but also the integrity of the [administrative] hearing process will be called into question." (*Sims*, at p. 488.)[6]

Giving preclusive effect to the Board's decisions also would prevent the efficacy of its proceedings from being undermined by the litigation here. The California Supreme Court has held that "[r]efusing to give binding effect to the findings of administrative agencies in quasi-judicial proceedings would . . . undermine the efficacy of such

---

[6] At oral argument, the Commissioner's counsel repeatedly and vehemently asserted the inconsistency between the two administrative decisions could be avoided if Happy Nails simply treated the cosmetologists as employees, as it had done before they restructured their business relationship in 2003. Such insistence, in the face of a final and binding determination by the Board that the cosmetologists are independent contractors, betrays the Commissioner's unwillingness to accept that a worker's status may change from employee to independent contractor. The law, however, does not require private parties to share the Commissioner's "once an employee, always an employee" mindset. Rather, private parties are free to change the nature of their business relationship in accordance with the "long-standing established public policy in California which respects and promotes the freedom of private parties to contract" (*Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1262) and which allows them "the widest latitude in this regard" (*Stephens v. Southern Pacific Co.* (1895) 109 Cal. 86, 89). Our adoption of the position advocated by the Commissioner's counsel at oral argument would effectively nullify the Board's determination and would impermissibly deny Happy Nails and the cosmetologists "their freedom to contract as they please" (*Rosen v. State Farm General Ins. Co.* (2003) 30 Cal.4th 1070, 1080), which they exercised by restructuring their business relationship.

28

proceedings, rendering them in many cases little more than rehearsals for litigation." (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 72.)

"Judicial economy is also served by applying issue preclusion.  Allowing the trial court to rely on the litigated and necessary findings from the administrative process would 'minimiz[e] repetitive litigation.'" (*Castillo*, *supra*, 92 Cal.App.4th at p. 483.)

"Finally, applying issue preclusion serves the policy of protecting parties from vexatious litigation." (*Castillo*, *supra*, 92 Cal.App.4th at p. 483.)  "The purpose of collateral estoppel is to prevent a party from repeatedly litigating an issue in order to secure a different result." (*Direct Shopping Network*, *supra*, 206 Cal.App.4th at p. 1562.) Here, the Division relitigated the issue of whether the cosmetologists working at Happy Nails salons are employees or independent contractors in an attempt to obtain a result different from the result reached by the Board, and in doing so forced Happy Nails to incur costs and attorney fees in addition to the hundreds of thousands of dollars it had already incurred in the proceedings before the Board.  Such a "manifestly unfair" situation should be avoided by application of collateral estoppel, which is designed to protect parties "from being harassed by repeated litigation." (*Sims*, *supra*, 32 Cal.3d at p. 489.)

"In short, we find no inequity in applying collateral estoppel to bring this litigation to a close." (*Direct Shopping Network*, *supra*, 206 Cal.App.4th at p. 1563.)  Under that doctrine, the Board's prior, final determination that the cosmetologists working at Happy Nails salons are independent contractors, not employees, is binding on the Division and prevents it from relitigating that issue to obtain a contrary result.

B.      *The Trial Court Must Consider Happy Nails' Requests for an Injunction and Attorney Fees on Remand*

In addition to its request that we reverse the judgment and direct the trial court to enter a new judgment annulling the Division's findings and orders, Happy Nails asks that we direct the trial court to enjoin the Division from asserting in the future that the cosmetologists at any of the salons covered by the Board's decisions are employees unless the Division makes a preliminary evidentiary showing of a material change in the relationship between the cosmetologists and the salons, and to award Happy Nails attorney fees. The trial court did not specifically address Happy Nails' requests for an injunction or fees, and we decline to do so in the first instance. Rather, as we shall explain, these matters must be addressed on remand.

In its complaint, Happy Nails requested a prohibitory injunction and an award of attorney fees in addition to a writ of administrative mandate setting aside the Division's findings and orders. Although the parties submitted briefs regarding the requested writ relief in the trial court, they did not submit briefs on the requested injunction or attorney fees, and the court did not rule on those requests. The parties' appellate briefs similarly do not directly address Happy Nails' requests for an injunction or attorney fees. Ordinarily, we do not consider claims or issues that were not decided by the trial court and were not adequately briefed on appeal, and instead deem them forfeited. (See, e.g., *Hansen v. Board of Registered Nursing* (2012) 208 Cal.App.4th 664, 672; *Cinnamon Square Shopping Center v. Meadowlark Enterprises* (1994) 24 Cal.App.4th 1837, 1844.) Here, however, Happy Nails' requests for an injunction and attorney fees became moot

30

when the trial court set a separate hearing on the request for a writ of administrative mandate and then denied that request.  Under these circumstances, we remand the case to allow the parties an opportunity to litigate the issues concerning Happy Nails' requests for an injunction and attorney fees.  (See, e.g., *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 168 [reversing dismissal and remanding matter for consideration of propriety of request for mandamus relief that trial court did not address]; *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 271 [remand for litigation of issue was appropriate when issue was rendered moot by erroneous trial court ruling].)

## DISPOSITION

The judgment is reversed.  The matter is remanded for further proceedings on Happy Nails' requests for a permanent injunction and attorney fees.  Upon conclusion of those proceedings, the trial court shall enter a judgment commanding the Commissioner to set aside the Division's findings and orders dated March 30, 2009, and granting Happy Nails any other relief to which the court determines it is entitled.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.

31